IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.K., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | File No. 1:23-cv-00108-TWT |
| RAMADA WORLDWIDE, INC. ) | |
| and NEWTEL V CORPORATION ) | |
| d/b/a RAMADA LIMITED SUITES, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN FURTHER SUPPORT OF
DEFENDANT NEWTEL V CORPORATION'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff J.K. ("Plaintiff") has failed to plausibly allege that Defendant Newtel V Corporation ("Newtel") participated in a common undertaking involving risk or profit with Plaintiff's sex trafficker, "Kelvin." As a result, under Eleventh Circuit precedent established in Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021), Plaintiff has failed to state a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the Complaint should be dismissed.

Plaintiff's sole factual allegation as to Newtel's purported common undertaking involving risk or profit with her trafficker is found at paragraph 41 of

the Complaint, where Plaintiff alleges that "Plaintiff's trafficker(s) would pay in cash for one night at a time, booking the next night's stay before check-out time . . . ." Complaint, ¶ 41. Attempting to capitalize on the term "prior commercial dealings" as used in other TVPRA caselaw,[1] Plaintiff asserts that because her trafficker paid for a room in cash on Day One, as of Day Two her trafficker had "prior commercial dealings" with Newtel. See Complaint, ¶ 41(g) ("After renting the room the room for the first night, Plaintiff's trafficker(s) had prior commercial dealings with Defendant Newtel and then reinstated those dealings."). Plaintiff then contends that such "prior commercial dealings" satisfy the requirement of a common undertaking involving risk or profit between Newtel and the trafficker.

Plaintiff's attempt at creative pleading misses the mark. What Plaintiff is really alleging is simply that Newtel repeatedly rented a room to a trafficker and benefitted financially therefrom. But the mere act of renting a room, even if done

---

[1] See, e.g., Ricchio v. McLean, 853 F.3d 553, 555 (1st Cir. 2017); Red Roof, 21 F.4th at 725 (quoting Ricchio). In similar fashion, Plaintiff's Complaint also parrots the terms "continuous business relationship" and "pattern of conduct" from other TVPRA cases, see, e.g., A.D. v. Wyndham Hotels & Resorts, Inc., No. 4:19cv120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020); M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019), as though merely pleading into such terminology would satisfy TVPRA pleading requirements. However, such cases predate Red Roof and do not provide the TVPRA pleading standard applicable in the Eleventh Circuit in any event.

so repeatedly, simply does not create the "common undertaking" required under the Eleventh Circuit's interpretation of the TVPRA.  See Red Roof, 21 F.4th at 726-27 (allegations that appellants financially benefitted from renting hotel rooms to sex traffickers "do nothing to show that the [appellants] participated in a common undertaking involving risk or profit that violated the TVPRA—i.e., the alleged sex trafficking ventures.").  The Red Roof opinion has subsequently been applied in this district to support the dismissal of TVPRA claims against hotel proprietors where, as here, the TVPRA claim is predicated merely on the renting of hotel rooms to sex traffickers.  See, e.g., C.C. v. H.K. Group of Co., Inc., Civil Action File No. 1:21-cv-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022)("Plaintiff has not alleged any interactions between Defendants or their employees and the alleged traffickers sufficient to establish that Defendants 'took part in a common undertaking' with the alleged traffickers.")(quoting Red Roof); A.B. v. H.K. Group of Co., Inc., Civil Action File No. 1:21-cv-1344-TCB, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022)(same; companion case to C.C.).

Indeed, one need only consider the allegations described in Ricchio to understand what is required to sustain a legitimate TVPRA claim, and how it differs in substance from what is alleged here.  In the below excerpt, the Ricchio court

3

summarizes the damning allegations of "prior commercial dealings" between Ricchio's trafficker, McLean, and the hotel operators, the Patels:

> McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. . . . McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit.  McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. . . . In these circumstances, it was a plausible understanding that McLean was forcing sex in the motel room where he held Ricchio hostage, and fairly inferable that the gainful business that Mr. Patel and McLean spoke of had been and would be in supplying sexual gratification.  It is likewise inferable that the Patels understood that in receiving money as rent for the quarters where McLean was mistreating Ricchio, they were associating with him in an effort to force Ricchio to serve their business objective.

Ricchio, 853 F.3d at 555.

Thus, in Ricchio, the circumstance giving rise to a TVPRA claim against the hotel operators was not the mere renting of a room to McLean on a previous occasion.  Rather, as the court explained, it was that the high-fives in the parking lot, and the stated plan to "get this thing going again," plainly showed that the Patels understood that by renting a room to McLean they were associating with him in his sex-trafficking enterprise.  There are no allegations of this kind in the present Complaint that would convert Newtel's mere renting of a room to "Kelvin," even on successive days, into active participation in his sex-trafficking venture.

4

Plaintiff highlights other allegations of the Complaint in her response brief, but they likewise fail to save the Complaint for they similarly fail to demonstrate a common undertaking between Newtel and "Kelvin." For example, Plaintiff alleges that Newtel allowed a side entrance to the hotel to remain open after hours. (Complaint, ¶ 34; Response Brief, p. 11) However, this is a conclusory allegation with no facts supporting the implication that Newtel purposely allowed the door to remain open to facilitate Kelvin's criminal activities. The allegation is simply insufficient to demonstrate Newtel's participation in Kelvin's sex-trafficking venture.

Similarly, Plaintiff alleges that her "victimization" was "readily observable" to hotel employees. (Complaint, ¶ 47, Response Brief, p. 11) But as the Eleventh Circuit has stated in this very context, "observing something is not the same as participating in it." Red Roof, 21 F.4th at 727; see also C.C., 2022 WL 467813, at *4 (rejecting theory that failing to assist plaintiff or alert authorities supported a TVPRA claim). Put another way, merely alleging that Newtel must have observed what Plaintiff describes as "guidelines" for identifying sex trafficking does not, under binding Eleventh Circuit precedent, equate to a plausible allegation of Newtel's participation in a sex-trafficking venture.

## CONCLUSION

Under Eleventh Circuit precedent established in <u>Red Roof</u> and subsequently applied in similar cases in this district, Plaintiff's Complaint fails to state a claim under the TVPRA.  Consequently, Newtel respectfully requests that the Complaint against it be dismissed.

Respectfully submitted,

 */s/ Dana M. Richens*
Dana M. Richens
Georgia Bar No. 604429
Smith, Gambrell & Russell, LLP
1105 W. Peachtree Street N.E.
Suite 1000
Atlanta, Georgia  30309
Tel:  (404) 815-3659
Fax:  (404) 685-6959
drichens@sgrlaw.com

Counsel for Defendant
Newtel V Corporation
d/b/a Ramada Limited Suites

## LR 7.1(D) CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the foregoing Reply was prepared with Times New Roman, 14 Point, which are font and point selections approved by the Court in LR 5.1(B).

          */s/ Dana M. Richens*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this date filed the within and foregoing **REPLY IN FURTHER SUPPORT OF DEFENDANT NEWTEL V CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** via the Court's CM/ECF system, which will automatically send notice constituting service to all registered counsel of record.

This 10th day of March, 2023.

/s/ Dana M. Richens