IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.K.,<br><br>  Plaintiff,<br><br>  v.<br><br>RAMADA WORLDWIDE, INC., et al.,<br><br>  Defendants. | CIVIL ACTION FILE<br>NO. 1:23-CV-108-TWT |

**OPINION AND ORDER**

The Plaintiff J.K. brings this case under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). It is before the Court on the Defendant Ramada Worldwide, Inc.'s ("Ramada") Motion to Dismiss [Doc. 11] and the Defendant Newtel V Corporation's ("Newtel") Motion to Dismiss [Doc. 14]. For the reasons set forth below, the Defendant Ramada's Motion to Dismiss [Doc. 11] is GRANTED, and the Defendant Newtel's Motion to Dismiss [Doc. 14] is DENIED.

I.   **Background**[1]

This case arises from allegations that the Plaintiff J.K. was a victim of sex trafficking at the Ramada Limited Suites hotel in Alpharetta, Georgia—a franchise owned by the Defendant Newtel and allegedly jointly operated and

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motions to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

managed by the Defendant Ramada. (Compl. ¶¶ 1–2). Between January 2013 and December 2014, J.K. claims that a man named Kelvin repeatedly trafficked her at the hotel and that the hotel "was a notorious hotspot for illicit activity that had been attracting sex trafficking and prostitution ventures for years." (*Id.* ¶¶ 3–4). On January 10, 2023, J.K. filed the present action, asserting a civil beneficiary claim under the TVPRA against Newtel and a vicarious liability claim against Ramada. Both Defendants now move to dismiss the Plaintiff's claims against them.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is

required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

In support of its Motion to Dismiss, the Defendant Newtel argues that the Plaintiff fails to plausibly allege that it took part in a common undertaking of sex trafficking and therefore fails to state a claim against it. (Br. in Supp. of Def. Newtel's Mot. to Dismiss, at 6–7). Similarly, the Defendant Ramada contends that the Plaintiff fails to state a vicarious liability claim against it because the Plaintiff fails to state an underlying TVPRA claim against Newtel. (Br. in Supp. of Def. Ramada's Mot. to Dismiss, at 17). Ramada separately argues that dismissal of the claims against it is proper because (1) the TVPRA does not provide for indirect liability based on agency theories and (2) the franchise agreement does not provide a basis to impute liability to it. (*Id.* at 7, 10). The Court addresses each of these arguments and the Plaintiff's responses thereto in turn.

#### A. Newtel Liability

Section 1595(a) of the TVPRA provides sex trafficking victims with a civil cause of action against their "perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value

from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a).

> [T]o state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Both the Plaintiff and the Defendants rely on *Red Roof* in support of their respective positions that the Plaintiff sufficiently states, or fails to state, a claim against Newtel under the TVPRA. Whether the Plaintiff adequately alleges the second element of a TVPRA beneficiary claim is the primary issue before the Court.

In *Red Roof*, the Eleventh Circuit held that the plaintiffs failed to plausibly allege that three hotel franchisors "took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers" and therefore failed to state a claim under the TVPRA. *Red Roof*, 21 F.4th at 726. The court reasoned that although the plaintiffs' allegations "suggest[ed] that the franchisors financially benefitted from renting hotel rooms to the [plaintiffs'] sex traffickers . . . they [did] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* The court also found insufficient to state a claim the plaintiffs' allegations that the franchisors "investigated the individual hotels, took remedial action when revenue was down, read online

4

reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Id.* The court noted that "observing something is not the same as participating in it." *Id.* at 727.

In contrast, the First Circuit in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), held that the plaintiff stated a plausible TVPRA claim against the hotel operator-defendant where she "plausibly alleged that the operators' association with the plaintiff's sex trafficker was a 'venture' because her abuser 'had prior commercial dealings with the [operators], which the parties wished to reinstate for profit.'" *Red Roof*, 21 F.4th at 725 (alteration in original) (quoting *Ricchio*, 853 F.3d at 555). The court in *Ricchio* summarized the plaintiff's allegations that plausibly pleaded a venture between the trafficker, McLean, and the hotel operators, the Patels, as follows:

> McLean enticed Ricchio to drive from Maine to the [motel] in Massachusetts, where he took her captive and held her against her will. Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. He told her that he was grooming her for service as a prostitute subject to his control. McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight

5

>  view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

*Ricchio*, 853 F.3d at 555.

The Defendants argue that this case is clearly distinguishable from *Ricchio* because it lacks the equivalent of high fives or any continuous business relationship that might suggest a tacit agreement between Kelvin and Newtel. (Br. in Supp. of Def. Ramada's Mot. to Dismiss, at 21; Br. in Supp. of Def. Newtel's Mot. to Dismiss, at 7). In response, the Plaintiff claims that she plausibly alleges a continuous business relationship between Kelvin and Newtel that amounted to an established pattern of conduct sufficient to state a beneficiary claim under the TVPRA because Kelvin "would pay in cash for one night at a time, booking the next night's stay before check-out time" and Newtel therefore "knew or should have known [the traffickers] were engaged in sex trafficking." (Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 8 (quoting Compl. ¶ 41)).

The Court concludes that the Plaintiff has sufficiently pleaded that Newtel took part in a common undertaking involving risk and potential profit such that it plausibly participated in a venture under the TVPRA. Specifically, the Plaintiff's allegations that the hotel staff "zip-tied the strike bar on the side entry door [to the hotel] so it would not lock . . . so those wishing to buy commercial sex from Kelvin . . . could enter and exit" sufficiently alleges a tacit agreement between Newtel and Kelvin to support the Plaintiff's claim. (Compl.

6

¶ 34). Such allegations are analogous to those of plaintiffs in several cases in this District where this Court held that the plaintiffs plausibly alleged participation in a venture by hotel owner-operators because they all included allegations that employees of the hotel owner-operators acted as "lookouts" for the plaintiffs' traffickers. *See, e.g.*, *A.G. v. Northbrook Indus., Inc.*, 2022 WL 1644921, at *3 (N.D. Ga. May 24, 2022); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022); *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1318 (N.D. Ga. 2022). And the present case is distinguishable from cases where plaintiffs only pleaded conclusory allegations that the hotel operators "observed and/or had actual or constructive knowledge of the illegality of sex trafficking allegedly occurring in [their] hotels." *C.C. v. H.K. Grp. of Co.*, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022). True, the alleged conduct of Newtel's employees here is not as brazen as that of the hotel operator's conduct in *Ricchio* where the trafficker and hotel operator allegedly exchanged high fives and spoke about "getting this thing going again." *Ricchio*, 853 F.3d at 555. But construing the Complaint's allegations in the light most favorable to the Plaintiff, the Court concludes that the Plaintiff's allegations sufficiently state a TVPRA beneficiary claim against Newtel.

The Court pauses to address the Plaintiff's reliance on *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020), in support of its position that a beneficiary of a sex trafficking venture need not directly participate in the trafficking itself to support a claim under the

7

TVPRA. (Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 8–9). The court in *Wyndham* reasoned that "[a]lthough a hotel does not directly or knowingly participate in sex trafficking by repeatedly renting rooms to a sex trafficking venture, it nevertheless assists, furthers, and facilitates the sex trafficking activity by doing so" and thus held that "a plaintiff may sufficiently allege participation in a venture under § 1595 by alleging that the defendant repeatedly rented rooms to people it knew or should have known were using those rooms to engage in sex trafficking." *Wyndham*, 2020 WL 8674205, at *3. But the Eleventh Circuit in *Red Roof* specifically rejected the Eastern District of Virginia's adoption of the TVPRA's definition of "participation" under the criminal provision ("knowingly assisting, supporting or facilitating a violation" of the statute) as being applicable to the civil provision. *Red Roof*, 21 F.4th at 724–25. Therefore, the Eastern District of Virginia's holding does not necessarily control the present case. Rather, opinions by district courts within this Circuit applying *Red Roof* are more instructive for the Court here.

### B. Ramada Liability

Turning to the franchisor's liability, the Plaintiff sets forth four separate theories of vicarious liability as to the Defendant Ramada that she claims support her TVPRA claim against it: actual agency, apparent agency, aiding and abetting, and joint venture. (Compl. ¶¶ 54–72). As a preliminary matter, Ramada claims that the TVPRA does not provide for an additional layer of indirect liability to franchisors based on agency theories. (Br. in Supp. of Def.

8

Ramada's Mot. to Dismiss, at 7). As the Court understands its position, Ramada argues that the TVPRA, by expressly setting forth requirements for civil liability against perpetrators,[2] impliedly excludes recovery for theories of indirect liability arising from that underlying civil liability. (*Id.* at 7–8). But Ramada cites no authority definitively establishing a prohibition of TVPRA beneficiary claims under a vicarious liability theory rooted in agency principles.

The Supreme Court has routinely assumed that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules" and, in that context, has held that "traditional vicarious liability rules ordinarily make principals . . . vicariously liable for the acts of their agents." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Accordingly, if Newtel was Ramada's actual or apparent agent, Ramada could be held liable for Newtel's violation of the TVPRA under a vicarious liability theory, and thus, Ramada could avoid liability on this ground.

---

[2] Ramada frames the issue as civil liability against "non-perpetrators," but it apparently misunderstands the statutory definition of perpetrators, which allows a "beneficiary claim" against whoever knowingly benefits from participation in a venture that they knew or should have known constituted a violation of the TVPRA. Those who participate in these ventures are indeed *perpetrators* of trafficking, even if they are not themselves subject to criminal liability.

Turning to the merits of the Plaintiff's asserted imputed liability claims, the Court agrees that *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177 (1994), forecloses the Plaintiff's aiding and abetting theory in Count 2(C). (Br. in Supp. of Def. Ramada's Mot. to Dismiss, at 9, 15–16). But the agency and joint venture theories of liability merit a closer look.

### 1. Actual Agency

"A franchisor does not become liable for the acts of its franchisee merely because of the franchisor/franchisee relationship." *Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875, 882 (2009). To establish actual agency pursuant to a franchise agreement under Georgia law, a plaintiff must plausibly allege that the franchisor controlled the time, manner, and method of the franchisee's day-to-day operations. *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 346 Ga. App. 548, 554–55 (2018).

> In applying this test, [Georgia courts] must be mindful of the special relationship created by a franchise agreement, for a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees. Given this special relationship, we have held that a franchisor may protect its franchise and its trade name by setting standards governing its franchisee's operations, and these standards may be quite detailed, specific, and strict. Moreover, the fact that a franchise agreement authorizes periodic inspections of the franchise and gives the franchisor the right to terminate the agreement for noncompliance is not enough to prove an agency relationship.

*Id.* at 555 (citation omitted).

10

Ramada cites several cases where courts have dismissed vicarious liability claims against hotel franchisors brought under the TVPRA. (Br. in Supp. of Def. Ramada's Mot. to Dismiss, at 14). In response, the Plaintiff notes that the existence of an agency relationship is generally a question of fact and argues that, regardless, she plausibly pleads the existence of an agency relationship between Ramada and Newtel. (Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 11–16). But allegations "tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business." *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708–09 (E.D. Mich. 2020) (quotation marks and citation omitted). Such are the allegations here pertaining to Ramada's "control" over Newtel. Importantly, none of the facts alleged appear to exceed that of a typical franchise agreement arrangement—for example, providing its trademark and brand signage, providing equipment and supplies, requiring payment of royalty fees and taxes, requiring the franchisee to join associations and attend conferences, setting hours and holidays, determining acceptance of credit cards and storage of consumer data, requiring job training, providing training tools and materials, and retaining the right to inspect the facility at any time. (Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 12–15; Compl. ¶¶ 55–57). These allegations tend to show that Ramada's "involvement was limited to uniformity and standardization of the brand" and thus, "even if

11

proven true, would fail to sufficiently demonstrate that [Ramada] exercised such complete control over the day-to-day operations of [Newtel's] business that its purported independence may be fairly dismissed as a fiction." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020) (quotation marks and citation omitted). And the Plaintiff's claim that "Ramada controlled the daily actions of Newtel" because it determined the "ultimate daily decision making for the [hotel's] operation," (Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 14), merely recites the requirements for franchisor liability without alleging any facts to support them. *Red Roof*, 21 F.4th at 729. Accordingly, the Plaintiff fails to plausibly plead that Newtel was an actual agent of Ramada, and therefore, Count 2(A) should be dismissed.[3]

The present case is distinguishable from the District Court's decision in *Red Roof* where this Court found that the plaintiff adequately pleaded agency theories of relief against three different hotel operator-defendants. *Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, slip op. at 19–22 (N.D. Ga. Feb. 3, 2021). Specifically, no franchise agreement was at issue between the three defendants there (contrary to the Plaintiff's framing of the issue), and the parent limited liability company "exercised ongoing and systemic control" over how the subsidiary limited liability company and the contracted management company "conducted their daily business." *Id.* at 7–10, 20; (Pl.'s Resp. Br. in

---

[3] The Plaintiff mistakenly labels its actual agency theory of vicarious liability as Count 1(A), instead of Count 2(A).

Opp'n to Def. Ramada's Mot. to Dismiss, at 15–16). Such factual circumstances are distinct from the franchise agreement between Ramada and Newtel giving rise to the Plaintiff's agency claims here.

### 2. Apparent Agency

Under Georgia law, "apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014). The Plaintiff claims that Ramada made several representations to her, including "[p]roviding years of advertising to develop a Ramada Trademark with which J.K. was familiar and which had secondary meaning for a large reputable hotel chain which followed the law" and "[h]aving the Ramada signs and marks located at the Limited Suites which communicated to J.K. that the facility was, in fact, a large reputable hotel chain which followed the law." (Compl. ¶ 59; Pl.'s Resp. Br. in Opp'n to Def. Ramada's Mot. to Dismiss, at 17). But the Court cannot conclude that such allegations amount to a representation of anything by Ramada to the Plaintiff. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is *reasonable* and is *traceable to a manifestation of the principal.*" Restatement (Third) Of Agency

13

§ 2.03 cmt. c. (2006) (emphasis added). Neither allegation here can be fairly characterized as a manifestation of Ramada; the Plaintiff's allegations amount to her impression of the hotel chain as being law abiding. Such allegations do not plausibly plead a representation that could be the foundation for liability under an apparent agency theory.

The Court's inquiry could properly begin and end with the first element, but the Plaintiff also fails to plausibly allege the second element required to show liability under an apparent agency theory. Even assuming that Ramada had "represented" to the Plaintiff that the hotel was a part of a chain that followed the law, such a representation would not have *caused* the Plaintiff to reasonably believe that Newtel was authorized to act for Ramada's benefit. It could only cause the Plaintiff to believe that the hotel was law-abiding. And in addition, the Plaintiff also fails to plausibly allege the third element because she failed to plead an appearance of agency from the second element upon which she relied to her detriment. *C.f. A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 942 (D. Or. 2020) ("Plaintiff has not alleged she relied on any representation by Defendants when engaging with the branded hotels."). Accordingly, the Plaintiff fails to state a vicarious liability claim under an apparent agency theory against Ramada, and therefore, Count 2(B) should be dismissed.

14

### 3. Joint Venture

"The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other." *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (1997). The Plaintiff's joint venture liability theory fails for largely the same reasons as its actual agency theory. Because the Court concluded that the Plaintiff does not plausibly allege that Ramada retains the right to control the time, manner, and method of Newtel's operations, the Court finds no mutual control exists that would support a claim of joint venture liability. *See Catalano v. GWD Mgmt. Corp.*, 2005 WL 5519861, at *12 (S.D. Ga. Mar. 30, 2005), *aff'd sub nom. Catalano v. McDonald's Corp.*, 199 F. App'x 803 (11th Cir. 2006). Thus, the Plaintiff's vicarious liability claim based on its joint venture theory fails as a matter of law. Because the Plaintiff fails to state a claim against Ramada on any of her vicarious liability theories, her claim against Ramada (Count II) should be dismissed in its entirety.

### IV. Conclusion

For the foregoing reasons, the Defendant Ramada's Motion to Dismiss [Doc. 11] is GRANTED, and the Defendant Newtel's Motion to Dismiss [Doc. 14] is DENIED.

15

SO ORDERED, this \_\_\_30th\_\_\_ day of August, 2023.

                                                THOMAS W. THRASH, JR.
                                                United States District Judge